U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

JUN 02 2015

CHRIS R. JOHNSON, Clerk

By _____

Deputy Clerk

| | |
|---|---|
| BENJAMIN MICHAEL MERRYMAN, AMY WHITAKER MERRYMAN TRUST, BENJAMIN MICHAEL MERRYMAN TRUST, AND B MERRYMAN AND A MERRYMAN 4TH GENERATION REMAINDER TRUST, individually and on behalf of all others similarly situated, | **CIVIL ACTION NO.** 15-5129 TLB |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| CITIGROUP, INC., CITIBANK, N.A., and Citigroup Global Markets Inc., | |
| Defendants. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     JURISDICTION AND VENUE ...................................................................... 4

III.    PARTIES ......................................................................................................... 5

IV.     FACTUAL ALLEGATIONS .......................................................................... 9

        A.      Citi's Role as a Depository Bank for ADRs ........................................... 9

        B.      The Contract Documents Did Not Permit Citi to Manipulate the
                FX Rates for Cash Distributions to ADR Holders................................ 10

        C.      Citi Secretly Assigned Unfavorable FX Rates to Unlawfully Retain
                Monies Rightfully Owed to ADR Holders ........................................... 13

        D.      Citi Actively Concealed its Unlawful Conduct .................................... 17

        E.      Citi Continues to Charge ADR Holders Unreasonable FX Rates......................... 18

V.      CLASS ACTION ALLEGATIONS ............................................................... 18

VI.     COUNTS........................................................................................................... 21

        COUNT I BREACH OF CONTRACT............................................................ 21

        COUNT II BREACH OF IMPLIED COVENANT OF GOOD FAITH
        AND FAIR DEALING ..................................................................................... 23

        COUNT III CONVERSION ........................................................................... 24

VII.    PRAYER FOR RELIEF ................................................................................. 25

VIII.   JURY TRIAL DEMANDED.......................................................................... 26

Plaintiffs Benjamin Michael Merryman, Amy Whitaker Merryman Trust, Benjamin Michael Merryman Trust and B Merryman and A Merryman 4th Generation Remainder Trust (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Citigroup Inc. ("Citigroup"), Citibank, N.A. ("Citibank"), and Citigroup Global Markets Inc. ("CGMI") (collectively, "Defendants," "Citi," or the "Bank") based upon information and belief[1] except as to the allegations pertaining specifically to Plaintiffs that are based on personal knowledge:

## I.    **INTRODUCTION**

1.     Citi is one of the world's leading investment and depositary banks. The Bank serves as a depositary bank for the issuance of American Depositary Receipts ("ADRs") and in that capacity is charged with certain contractual and implied obligations to the holders of the ADRs, for which it acts as depositary ("ADR Holders"). According to the Bank's website, Citi "began offering [A]DRs in 1928 and today is widely recognized for providing issuers with its powerful global platform, facilitating access to a global network that issuers can use to build and grow their [A]DR program."[2]

2.     This is an action for injunctive relief and to recover damages on behalf of Plaintiffs and proposed Class members (as defined below) for harm suffered as a result of Citi's unlawful practice of systematically deducting undisclosed and unreasonable charges from

---

[1] Plaintiffs' information and belief is based on an investigation (by and through their counsel) that included review and analysis of: (i) Citi's public documents and announcements; (ii) newspaper articles and other publications concerning Defendants and/or practices relating to foreign exchange currency trading; (iii) foreign companies' public documents, wire and press releases, Bloomberg data, and United States Securities and Exchange Commission ("SEC") filings; (iv) the pricing of American Depositary Receipt ("ADR") foreign exchange ("FX") transactions by Citi; (v) consultation with industry experts; and (vi) the underlying governing documents relating to Citi's provision of ADR services to Plaintiffs.

[2] https://wwss.citissb.com/adr/common/file.aspx?idf=1249 (last accessed May 28, 2015).

dividends and/or cash distributions (collectively, "Cash Distributions") issued by foreign companies and rightfully owed to ADR Holders.

3.      Throughout the Class Period (as defined below), Citi breached its contractual duties to Plaintiffs and Class members – for whose benefit Citi was obligated to act – by engaging in a scheme to secretly assign unfavorable exchange rates applied to the conversion of non-U.S. dollar ("USD")-based Cash Distributions by foreign companies prior to issuing those payments to ADR Holders. Citi would then unlawfully keep the spread between the exchange rate the Bank actually received at the time of the conversion and the rate Citi charged its clients. As a result of its secret assignment of unfavorable exchange rates – and unbeknownst to ADR Holders – Citi unlawfully skimmed millions of dollars from Cash Distributions owed and payable to Plaintiffs and Class members.

4.      Citi's unlawful scheme to surreptitiously overcharge ADR Holders by assigning exchange rates in its favor is evidenced by Plaintiffs' analysis of 610 Cash Distributions, covering 22 different currencies, and made to the holders of 83 unique ADRs for which Citi served as the depositary bank between 2000 and 2015.[3]  Comparing the FX conversion rate that Citi assigned to Cash Distribution conversions to the range of the interbank market rates on the day that the Cash Distributions were converted ("FX Conversion Date") shows that ADR Holders received unfavorable FX conversion rates *below the midpoint* of the day's trading in *71% of conversions (433 of 610 transactions).*  In *almost 27% of the FX conversions* in the sample examined *(164 of 610 transactions)*, the FX conversion rate Citi charged ADR Holders was *at or near the very worst rate* of the day's trading range.[4]

---

[3] Citi acted as the sponsored depositary bank for 134 companies during the period analyzed.

[4] Data according to Oanda Corporation (http://www.oanda.com/currency/converter/) (last accessed May 28, 2015).

5.     On information and belief, the FX rates Citi charged Plaintiffs and Class members had no relationship to the prevailing interbank market rate at the time Citi executed the trades, or the rate Citi actually received at the time of the conversion, and were selected after-the-fact, solely to maximize Citi's profits at the expense of ADR Holders.

6.     A normal distribution of the rates achieved by Citi on currency conversions—not subject to unlawful manipulation by the bank—would have predicted a majority of rates falling *around the midpoint* of the day's trading range for the currency.  Instead, the rates that Citi charged its ADR Holders were skewed disproportionally towards the worst rates of the day.  The below graph illustrates a sample of the foreign currency rates for Cash Distribution conversions that Citi assigned to ADR Holders:



7.      As illustrated in the above graph, over a 15 year period from 2000 through 2015, the FX rates Citi charged ADR Holders for dividend conversions were skewed towards the worst rates available during the trading day (-100% of the day's median rate in the interbank market). Such a pattern evidences an intentional effort by Citi to assign disadvantageous FX rates to ADR Holders in order to earn ill-gotten profits at ADR Holders' expense.

8.      On information and belief, Citi's scheme allowed the Bank to retain millions of dollars in Cash Distributions owed to Plaintiffs and Class members by charging ADR Holders a worse FX rate than the Bank actually received on the ADR Holders' dividends paid by foreign companies, without disclosing that it was unlawfully profiting by adding a spread, and in breach of its contractual obligations that specified the fees that Citi was permitted to charge ADR Holders.

9.      Upon information and belief, Citi continues to unlawfully charge Plaintiffs and Class members an unreasonable and unfair fee on its FX conversions for Cash Distributions to ADR Holders by adding an undisclosed spread over and above the rates actually achieved on the FX conversion of Cash Distributions.

II.     **JURISDICTION AND VENUE**

10.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because: (i) this is a class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; (ii) there are thousands of potential Class members; (iii) the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000.00; and (iii) Citi is a citizen of a State different from that of Plaintiffs and the Class.

11.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Citi is a citizen of a different State from that of Plaintiffs and the Class and the amount in controversy exceeds $75,000.

12.     This Court also has subject matter jurisdiction over Plaintiffs' and the proposed Class's claims pursuant to 28 U.S.C. § 1367(a).

13.     This Court has personal jurisdiction over Citi. Citi has sufficient minimum contacts with the State of Arkansas, is authorized to conduct business in Arkansas, engages in continuous and systematic activities within the state, and has purposefully availed itself of the benefits of doing business in Arkansas.

14.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because: (i) pursuant to 28 U.S.C. § 1391(c)(2), Citi is deemed to reside in this District, which has personal jurisdiction over Citi with respect to this action; and (ii) a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this District.

III.    **PARTIES**

15.     Plaintiff Benjamin Michael Merryman is a resident of the state of Arkansas.  Mr. Merryman was an ADR Holder in the following entities for which Citi served as the depositary: China Petroleum & Chemical; ABB LTD; Taiwan Semiconductor Manufacturing Company Ltd; Orix Corporation; and Koninklijke Philips N.V.

16.     Mr. Merryman is Power of Attorney for the Amy Whitaker Merryman Trust (the "Whitaker Merryman Trust").  The Whitaker Merryman Trust was an ADR Holder in the following entities for which Citi served as the depositary: ABB LTD; and Orix Corporation.

17.     Mr. Merryman is Trustee of the Benjamin Michael Merryman Trust.  The Benjamin Michael Merryman Trust was an ADR Holder in the following entities for which Citi served as the depositary: Koninklijke Philips N.V.

5

18.     Mr. Merryman is Trustee of the B Merryman and A Merryman 4th Generation Remainder Trust (the "4th Generation Remainder Trust"). The 4th Generation Remainder Trust was an ADR Holder in the following entities for which Citi served as the depositary: ABB LTD; Koninklijke Philips N.V; Kyocera LTD; Orix Corporation; Taiwan Semiconductor Manufacturing Company Ltd.; and WPP PLC.

19.     During the Class Period, Citi converted foreign currencies into USD for ADRs owned by Plaintiffs and Plaintiffs were damaged by the Bank's misconduct as alleged herein. The following table demonstrates the ADRs held by Plaintiffs and the Cash Distributions Plaintiffs received, in relation to those ADR holdings:

| Account Name | Holding | Dividends Paid in Year |
|---|---|---|
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | ABB LTD | 2008 |
| Amy Whitaker Merryman Trust | ABB LTD | 2009 |
| 4th Generation Remainder Trust | ABB LTD | 2011 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | China Petroleum & Chemical | 2007 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | China Petroleum & Chemical | 2008 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | China Petroleum & Chemical | 2009 |
| 4th Generation Remainder Trust | Koninklijke Philips N.V. | 2014 |

| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Koninklijke Philips N.V. | 2014 |
|---|---|---|
| Benjamin Michael Merryman Trust | Koninklijke Philips N.V. | 2014 |
| 4th Generation Remainder Trust | Kyocera LTD | 2013 |
| 4th Generation Remainder Trust | Orix Corporation | 2011 |
| Amy Whitaker Merryman Trust | Orix Corporation | 2011 |
| 4th Generation Remainder Trust | Orix Corporation | 2012 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Orix Corporation | 2012 |
| 4th Generation Remainder Trust | Orix Corporation | 2013 |
| Amy Whitaker Merryman Trust | Orix Corporation | 2013 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Orix Corporation | 2013 |
| 4th Generation Remainder Trust | Orix Corporation | 2014 |
| Amy Whitaker Merryman Trust | Orix Corporation | 2014 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Orix Corporation | 2014 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Taiwan Semiconductor Manufacturing Company Ltd. | 2009 |

| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Taiwan Semiconductor Manufacturing Company Ltd. | 2010 |
|---|---|---|
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Taiwan Semiconductor Manufacturing Company Ltd. | 2011 |
| Benjamin M Merryman & Amy Whitaker Merryman TEN/COM | Taiwan Semiconductor Manufacturing Company Ltd. | 2012 |
| 4th Generation Remainder Trust | Taiwan Semiconductor Manufacturing Company Ltd. | 2014 |
| 4th Generation Remainder Trust | WPP PLC | 2012 |

20.    Defendant Citigroup, Inc. is a global diversified financial services holding company, with operations throughout the United States and the world, with its principal place of business at 399 Park Ave., New York, New York 10022. Defendant Citibank, N.A. is a wholly owned subsidiary of Citigroup, Inc., that maintains its headquarters at 701 East 60th Street North, Sioux Falls, SD 57104.   Defendant Citigroup Global Markets Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 388 Greenwich Street, New York, New York 10013. On information and belief, Citigroup Global Markets Inc. acted as an agent of Citigroup, Inc. and Citibank, N.A. in executing FX transactions attendant to ADR Cash Distributions. On information and belief, the FX services at issue in this action were furnished by Citibank N.A., CGMI and other subsidiaries of Citigroup, Inc.  Citi maintains its ADR operations at 388 Greenwich Street, New York, New York 10013, but also at other locations around the world including in London and Hong Kong. As alleged herein, Citigroup, Inc., Citibank, N.A. and CGMI unlawfully deprived ADR Holders of the full amounts owed upon Cash Distributions to ADR Holders during the Class Period by applying unreasonable FX rates to conversions of foreign currency into USD.

8

## IV.   FACTUAL ALLEGATIONS

### A.   Citi's Role as a Depositary Bank for ADRs

21.     Citi serves as a depositary bank and contracts with foreign stock corporations for the issuance of ADRs in the United States through Deposit Agreements.[5]  Under the ADR and Deposit Agreements (collectively, the "Contract Documents"), Citi holds shares issued by foreign companies on behalf of and for the benefit of U.S. investors in the ADRs (as defined above, "ADR Holders").

22.     An ADR is a security that represents shares of non-U.S. companies held by a U.S. depositary bank. ADRs allow U.S. investors to invest in foreign companies by trading in U.S. dollars. According to Citi's website, "from the investor perspective, [A]DRs have long been a popular instrument in worldwide capital markets, particularly where the elimination of custody and cross-border safe-keeping charges are a key benefit."[6]

23.     Although ADRs are bought and sold in USD, from time to time, the underlying foreign companies may issue dividends or make other payments (*e.g.*, consideration provided during a merger or distributing proceeds of a sale) in foreign currency to their shareholders (hereinafter, "Cash Distributions").  The depositary bank is generally required to convert the Cash Distributions into USD and distribute the funds to the corresponding ADR Holders.  This conversion takes place through a FX transaction, whereby foreign currency is exchanged for USD at a particular rate available in the currency market.

24.     In its role as a depositary, Citi exercised control over ADR Holders and their assets when executing FX conversions of Cash Distributions.

---

[5] *See, e.g.*, Exs. 1-6, attached hereto (Deposit Agreements between Citibank, N.A. and ABB LTD, Kyocera LTD, Orix Corporation, WPP PLC, China Petroleum & Chemical, and Taiwan Semiconductor Manufacturing Company Ltd., respectively).

[6] https://wwss.citissb.com/adr/common/file.aspx?idf=1249 (last accessed May 28, 2015).

25.    Plaintiffs and Class members are consumers who purchased the ADRs at issue through Citi's ADR Department and are parties to the Contract Documents.

**B.    The Contract Documents Did Not Permit Citi to Manipulate the FX Rates for Cash Distributions to ADR Holders**

26.    Citi entered into Deposit Agreements with foreign companies (for all ADRs that define the underlying securities that the ADRs represent) that set forth the rights and obligations of Citi, the foreign companies, and the ADR Holders.  Upon purchasing ADRs, ADR Holders become parties to the Deposit Agreements.[7]  The ADRs are annexed to and incorporated into the Deposit Agreements and contain additional terms that are incorporated by reference into the terms of the respective Deposit Agreements.[8]

27.    The Contract Documents are governed by New York law. *E.g.,* Ex. 1 at § 7.6 (ABB LTD Deposit Agreement).[9]

28.    On information and belief, all or nearly all Contract Documents that are pertinent to this action contain substantially similar language.

29.    In its role as a depositary bank, Citi holds the underlying securities and associated Cash Distributions on behalf of Plaintiffs and the Class, and is obligated to convert the Cash Distributions into USD with good faith, honesty and the observance of reasonable commercial standards of fair dealing.  Citi controlled all aspects of FX trades related to the conversion of Cash Distributions, including the cost and time of the trade, and was required to act in the ADR

---

[7] *See, e.g.,* Ex. 1 at 1 (ABB LTD Deposit Agreement) (stating that the deposit agreement is between ABB LTD, Citi, and the "Holders and Beneficial Owners of American Depositary Shares evidenced by American Depositary Receipts Issued Hereunder").

[8] *See, e.g.,* Ex. 1 at § 1.13 (ABB LTD Deposit Agreement) (defining "Deposit Agreement" as this "Deposit Agreement and all exhibit hereto . . . ."); *id.* at Ex. A (ABB LTD American Depositary Receipt).

[9] *See also* Ex. 2 at § 7.07 (Kyocera Deposit Agreement); Ex. 3 at § 7.6 (Orix Corporation Deposit Agreement); Ex. 6 at § 7.06 (Taiwan Semiconductor Manufacturing Company Ltd. Deposit Agreement).

Holders' best interests when performing its duties as a depositary bank. The Contract Documents require Citi to distribute to each ADR Holder, in proportion to the number of deposited securities that correspond to the ADR Holder's ownership of ADRs, any USD resulting from Cash Distributions by the foreign corporation. *E.g.*, Ex. 1 at § 4.1 (ABB LTD Deposi Agreement).[10] Pursuant to the Contract Documents, whenever Citi received foreign currency by way of dividends or other distributions or the net proceeds from the sale of securities, property or rights, Citi was obligated to use its "judgment" to determine whether the proceeds could be converted "*on a practicable basis*" into USD and transferred to ADR Holders. *E.g.*, Ex. 1 at §§ 4.1, 4.8 (ABB LTD Deposit Agreement).[11] If Citi determined, in its judgment, to convert the funds, the Contract Documents require Citi to "*promptly* convert or cause to be converted" such Cash Distributions, and to "*distribute promptly* the amount thus received (net of (a) the applicable fees and charges of, and reasonable out-of-pocket expenses incurred by, the Depositary and (b) taxes withheld)" to ADR Holders. *E.g.*, Ex. 1 at § 4.1 (ABB LTD Deposit Agreement); *see also id.* at § 4.8; Ex. A, ¶14.

30.     The fees and expenses Citi is permitted to charge under the Contract Documents are specifically enumerated in the Contract Documents. *E.g.*, Ex. 1 at § 5.9 & Ex. B (ABB LTD Deposit Agreement).[12] Citi's Dividend Announcements (defined below) also disclose the fees Citi charges in connection with Cash Distributions. *See, e.g.*, Ex. 7 (Dividend Announcement for Kyocera Corp.).

---

[10] *See also* Ex. 2 at § 4.01 (Kyocera Deposit Agreement); Ex. 4 at § 4.02 (WPP PLC Deposit Agreement).

[11] *See also* Ex. 2 at §§ 4.01; 4.05 (Kyocera Deposit Agreement); Ex. 3 at §§ 4.01, 4.08 (Orix Corporation Deposit Agreement); Ex. 5 at §§ 4.1, 4.8 (China Petroleum & Chemical Corporation Deposit Agreement); Ex. 6 at §§ 4.01, 4.05 (Taiwan Semiconductor Manufacturing Company Ltd. Deposit Agreement).

[12] *See also* Ex. 3 at § 5.9 & Ex. B (Orix Corporation Deposit Agreement); Ex. 4 at § 5.09 & Ex. B (WPP PLC Deposit Agreement).

31.     Additionally, the Contract Documents obligated Citi to perform its obligations "*without negligence or bad faith.*" *E.g.,* Ex. 1 at § 5.3 (ABB LTD Deposit Agreement).[13]

32.     Thus, pursuant to the Contract Documents, and at all relevant times, Citi was required to convert Cash Distributions paid on the underlying stock of the foreign stock corporation into USD for the benefit of ADR Holders such as Plaintiffs and Class members.   At no time did ADR Holders authorize Citi to charge a spread over and above the FX rates Citi converted Cash Distributions, or withhold any proceeds associated with converting Cash Distributions into USD, other than such fees specifically enumerated in the Contract Documents and disclosed to ADR Holders.

33.     In addition, Citi is subject to an implied covenant of good faith and fair dealing under the Contract Documents which obligated the Bank to execute FX transactions on ADR Cash Distributions with good faith, honesty in fact and the observance of reasonable commercial standards of fair dealing.

34.     Plaintiffs and Class members performed their duties under the Contract Documents.

35.     Plaintiffs and Class members contracted with and relied on Citi to convert Cash Distributions to USD "*promptly*," "*without negligence or bad faith*" and in compliance with its contractual duties and implied covenants.

---

[13] *See also* Ex. 3 at § 5.03 (Orix Corporation Deposit Agreement); Ex. 4 at § 5.03 (WPP LTD Deposit Agreement); Ex. 5 at § 5.3 (China Petroleum & Chemical Corporation Deposit Agreement); Ex. 6 at § 5.03 (Taiwan Semiconductor Manufacturing Company Ltd. Deposit Agreement) (noting that Citi agrees to use perform its duties under the agreement in "good faith and using their reasonable judgment."); Ex. 2 at § 5.03 (Kyocera Deposit Agreement) (noting that Citi agrees to use "its best judgment and good faith in the performance" of its obligations under the agreement).

**C.**     **Citi Secretly Assigned Unfavorable FX Rates to Unlawfully Retain Monies Rightfully Owed to ADR Holders**

36.     In breach of its contractual and implied obligations, Citi surreptitiously overcharged Plaintiffs and Class members by secretly assigning unfavorable FX rates to Cash Distributions in the form of excessive and undisclosed spreads above the prevailing interbank rates at which the Cash Distributions were converted.  In this way, Citi has unlawfully retained proceeds rightfully owed to ADR Holders.

37.     When Citi received Cash Distributions from foreign companies, it was charged with converting foreign funds into USD pursuant to the Contract Documents. On information and belief, Citi executed (and continues to execute) FX conversions for Cash Distributions on the date Citi receives the Cash Distribution from the foreign company (as defined above, the "FX Conversion Date").[14]

38.     However, rather than charging ADR Holders the rate Citi received at the time the conversion was executed less reasonable expenses permitted by the Contract Documents, Citi assigned ADR Holders FX rates that, in the vast majority of instances, were far less favorable than even the median rate available in the market for a given day. The rates Citi charged its ADR Holders *were disadvantageous to ADR Holders relative to the mid-point of the trading day for more than two-thirds of the transactions analyzed*.  This pattern is indicative of Citi assigning unfavorable rates to ADR Holders rather than acting in good faith, with honesty in fact and according to reasonable commercial standards of fair dealing, a violation of its obligations to Plaintiffs and Class members.

---

[14] *E.g.* Ex. 7 (Dividend Announcement for Kyocera Corporation) (noting "ADR Payable Date").

39.     Shown below is a graph plotting 610 individual FX transactions where Citi converted Cash Distributions into USD during the period 2000 through 2015.  The percentages on the x-axis of the graph plot a score for the rates achieved by Citi for daily FX rates relative to the rates available in the interbank market for the given trading day.  Trades scored at 100% or greater were executed at the most favorable FX rate within a trading day, whereas trades scored at -100% or lower were executed for Plaintiffs and Class members at the worst possible FX rate within a trading day.  The y-axis of the graph represents the frequency at which FX trades were executed at a certain deviation from the median rate.

40.     In a normal distribution—unaltered by manipulation—where the FX pricing is competitive, the graph would result in a bell-shaped distribution, or a symmetrical distribution around an average, where the average level has the largest number of observations, and the number of observations gradually reduce as they move away from the average.  Any significant divergence from a bell-shaped distribution demonstrates systematic bias in the pricing.



**Graph 1**

41.      As evidenced by the majority of conversions falling on the left side of the above graph, Citi, in the vast majority of FX conversions of Cash Distributions, exchanged foreign-denominated dividends at a rate that was disadvantageous to ADR Holders.  Critically, this pattern of executing FX transactions at rates frequently unfavorable to ADR Holders, which extends to FX conversions in 83 different companies and 610 different transactions, cannot be due to chance. Rather, the pattern reflects an intentional effort by Citi to exploit the daily range in FX prices by unlawfully adding a spread to the rates it actually achieved and thereby retaining monies rightfully owed to Plaintiffs and Class members.

42.      The above graph was prepared by examining the rates at which Citi exchanged foreign-denominated dividends (each transaction, a "FX Dividend Conversion") for USD in 610

15

instances from 83 unique companies from the period 2010 through 2015. The analysis included comparing the rate stated on Citi's website,[15] where available, or rates obtained from Bloomberg, for each FX Dividend Conversion, with the publicly available interbank rate for the FX Conversion Date. The individual FX Dividend Conversions performed by Citi were compared to the median interbank rate for the FX Conversion Date and then the FX Dividend Conversions were scored on a scale from -100% to 100% relative to how their respective rates compared to the median interbank rate for the FX Conversion Date. The rates at which investors received the least favorable FX Dividend Conversions are negative (with -100% equal to the least favorable rate available in the Interbank market), and the rates at which investors received the most favorable FX Dividend Conversions are positive (with 100% equal to the most favorable rate available in the interbank market).

43.     In breach of its contractual and implied obligations owed to Plaintiffs and Class members, the above analysis reveals a pattern whereby Citi has overcharged ADR Holders by secretly assigning unfavorable FX rates to the conversion of Cash Distributions executed on behalf of Plaintiffs and Class members.

44.     As alleged herein, when foreign companies for whom Citi serves as a depositary bank issued ADR Cash Distributions, Citi charged an undisclosed mark-up to the FX rates available at the time the Bank converted payments owed to ADR Holders. On information and belief, Citi selected an FX rate to assign ADR Holders different from the rate it actually achieved on the conversion of the foreign currency. As illustrated in the chart above, these pricing choices have resulted in ADR Holders getting FX rates that are grossly distorted over what they should have obtained absent manipulation by Citi.

---

[15] https://wwss.citissb.com/adr/guides/dividends.aspx?pageId=3&subpageid=116 (last accessed May 28, 2015).

45.     Upon information and belief, as a result of this scheme, during the Class Period, Citi generated millions of dollars in unlawful profits at the expense of ADR Holders in breach of its contractual and implied duties to Plaintiffs and Class members.  Accordingly, Plaintiffs bring this suit, individually and as a class action on behalf of all similarly affected clients, to recover all unlawfully retained monies and damages resulting from Citi's wrongful conduct and to enjoin Citi from any further breach of the Contract Documents and/or its implied duties.

**D.      Citi Actively Concealed its Unlawful Conduct**

46.     Citi possessed material information related to the FX rates available in the interbank market at the time it received the ADR Cash Distributions from foreign companies, and failed to provide this information to Plaintiffs and Class members.  Plaintiffs and Class members had no way of obtaining this information or deciphering the Bank's scheme without a systematic analysis of *every single* FX conversions of Cash Distributions across multiple ADRs for an extended period of time, such as the one Plaintiffs have conducted herein.

47.     During the Class Period, and continuing to present, Citi provided Plaintiffs and Class members with "Dividend Announcements" detailing Cash Distributions paid on ADRs. *See, e.g.,* Ex. 7 (Dividend Announcement for Kyocera Corp.).  The Dividend Announcements did not disclose the time of day at which the underlying trade was executed, or that the Bank was profiting from the spread on FX rates.  Citi did not time-stamp FX conversions, leaving Plaintiffs and Class members (a) unaware of the exact time, and therefore the actual value, of the currencies exchanged in the FX Dividend Conversions; and (b) unable to detect any pattern of manipulation in the rates being assigned to Cash Distributions to ADR Holders.

48.     As a result of the manner and method of Citi's reporting to ADR Holders, Defendants' breaches of its contractual and implied obligations under the Contract Documents have been inherently undiscoverable until now.  Plaintiffs and Class members did not know, and

through the exercise of due diligence, could not have known, of Citi's wrongful acts giving rise to their claims and damages prior to Plaintiffs' investigation.

49.     Plaintiffs and Class members affirmatively plead the doctrines of fraudulent concealment and the discovery rule, and allege that their claims are not precluded by the applicable statutes of limitations.

E.     **Citi Continues to Charge ADR Holders Unreasonable FX Rates**

50.     Based on information and belief, Citi continues to charge and retain a spread on the conversion of Cash Distributions for ADR Holders.

51.     Citi's continued collection of unfair and unreasonable FX conversion fees (that are not permitted under the Contractual Documents) are unrelated to reasonable interbank market rates and/or the Bank's reasonable fees and expenses, and is a violation of its contractual and implied duties to Plaintiffs and Class members.

V.     **CLASS ACTION ALLEGATIONS**

52.     Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of all persons or entities who, from or after at least January 1, 2000 to the present (the "Class Period"), are or were holders of depositary receipts for which Citi served as the depositary bank and converted foreign-currency dividends or other distributions into USD (the "Class"). Excluded from the Class are Citi and its officers, directors, legal representatives, heirs, successors, corporate parents, subsidiaries, and/or assigns.

53.     The members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are hundreds, if not thousands, of proposed Class members.

18

54.     Citi continues to breach its contractual and implied duties to Plaintiffs and Class members on grounds that apply generally to the Class so that final injunctive relief is appropriate with respect to the Class as a whole.

55.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. These common questions include, but are not limited to:

(a)     Whether Citi imposes FX rates for ADR Cash Distributions that are unrelated to the FX rates the Bank received and/or the interbank trading rate at the time of execution;

(b)     Whether Citi improperly deducts undisclosed and/or unreasonable charges from Cash Distributions paid to ADR Holders;

(c)     Whether Citi is in breach of and/or breached its contractual obligations owed to ADR Holders by charging FX rates that are not permitted under the Contractual Documents, do not reflect interbank trading rates at the time of execution or the FX rate Citi actually received;

(d)     Whether Citi is in breach of and/or breached its implied covenant of good faith and fair dealing by charging FX rates that do not reflect interbank trading rates at the time of execution or the FX rate Citi actually received, and are undisclosed;

(e)     Whether Citi is in breach of and/or breached its contractual obligations owed to ADR Holders by failing to disclose the FX rate at which the Bank received Cash Distributions, the unreasonable nature of the FX rates it

charges ADR Holders, and that the Bank is profiting at ADR Holders' expense;

(f)   Whether Citi has converted assets belonging to Plaintiffs and Class members;

(g)   Whether Plaintiffs and Class members suffered monetary damages as a result of Citi's conduct; and

(h)   The appropriate measure of damages.

56.   Plaintiffs' claims are typical of the claims of the Class. As alleged herein, Plaintiffs and Class members all sustained damages arising out of Defendants' unlawful course of conduct.

57.   Plaintiffs are willing and prepared to serve the proposed Class in a representative capacity with all of the obligations and duties material thereto.   Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to, or which conflict with, the interests of other members of the Class.

58.   Plaintiffs' interests are co-extensive with and not antagonistic to those of absent Class members.   Plaintiffs will undertake to represent and protect the interests of absent Class members.

59.   Plaintiffs have engaged the services of the undersigned counsel.   Counsel is experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent Class members.

60.   The questions of law and fact common to the Class, as summarized above, predominate over any questions affecting only individual members, in satisfaction of Rule 23(b)(3), and each such common question warrants class certification under Rule 23.

61.     A class action is superior to other available methods for the adjudication of this controversy.  Individualized litigation increases the delay and expense to all parties and the court system given the complex legal and factual issues of the case, and judicial determination of the common legal and factual issues essential to this case would be far more fair, efficient, and economical as a class action maintained in this forum than in piecemeal individual determinations.

62.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  Compared to individualized actions, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    COUNTS

### COUNT I
### BREACH OF CONTRACT

#### (Against Citibank, N.A.)

63.     Plaintiffs restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

64.     Plaintiffs and Class members purchased ADRs and accepted the contractual terms offered by Citibank in the Deposit Agreements by agreeing to become a party to the Deposit Agreement corresponding to each ADR that was purchased.  The ADRs and their terms were annexed to and incorporated into the Deposit Agreements.

65.     The Deposit Agreements and the ADRs (collectively, the "Contract Documents") make up a valid and enforceable contract.  Citibank, Plaintiffs and Class members are parties to

and bound by the terms and provisions of the Contract Documents, and the Contract Documents are substantially uniform across all ADRs and Class members.

66.     The Contract Documents set forth Citibank's obligations and duties to ADR Holders and require Citibank to convert foreign currency received through Cash Distributions to USD "promptly" (to the extent that Citi determines that the conversion may be made "on a practicable basis") and "without negligence or bad faith."   Moreover, the Contract Documents enumerate the lawful fees that Citi may charge ADR Holders.

67.     Pursuant to the Contract Documents, the conversion of Cash Distributions from foreign currency to USD falls within the sole judgment and discretion of Citibank. Plaintiffs and Class members have no control over FX conversions related to Cash Distributions and no knowledge of the FX rate available at the time of the trade execution.

68.     Citibank breached its obligations and duties under the Contract Documents by charging an undisclosed and unauthorized fee to ADR Holders, and by acting in bad faith by concealing the fact of this fee.

69.     Citibank further breached its obligations and duties under the Contract Documents by deducting a spread from Cash Distributions paid to ADR Holders that was unrelated to the Bank's reasonable and/or actual expenses associated with the FX conversions, and was not permitted under the Contract Documents.

70.     To date, Citibank continues to breach its obligations and duties under the Contract Documents by charging an undisclosed and unlawful spread on FX conversions of ADR Holders' Cash Distributions, which bears no relation to the prevailing interbank rate, or the Bank's reasonable expenses.

71.     Plaintiffs and Class members performed their duties under the Contract Documents.

72.     Plaintiffs and Class members have been and continue to be damaged as a direct and proximate result of Citibank's breach of its obligations and duties under the Contract Documents, and the Bank's unlawful pocketing of Plaintiffs' and Class Members' monies, and are entitled to damages.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Citibank, N.A.)

73.     Plaintiffs restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

74.     Citibank is subject to an implied covenant of good faith and fair dealing under the Contract Documents.  Under that implied covenant, at all times, Citibank was obligated to execute FX transactions on ADR Cash Distributions with good faith, honesty in fact and the observance of reasonable commercial standards of fair dealing.  The implied covenant protects Plaintiffs and Class members from self-dealing by the Bank.

75.     Citibank breached its implied covenant of good faith and fair dealing by secretly assigning FX rates in a manner intended to deprive Plaintiffs and Class members of the benefits of their Contract Documents—specifically, their rightful Cash Distributions.

76.     Citibank further breached its implied covenant of good faith and fair dealing by concealing material information related to the FX rates it received when exchanging Cash Distributions from foreign companies and the time of the underlying trade.  Plaintiffs and Class members reasonably expected Citibank to disclose any material information related to the conversion of their Cash Distributions, including the unreasonable nature of the FX rates ADR

Holders were being charged and that the Bank was profiting at its customers' expense, and were harmed by the Bank's failure to disclose such information.

77.     Citibank's acts were deliberately undertaken to wrongfully deprive Plaintiffs and Class members of their lawful right to receive ADR Cash Distributions at reasonable FX rates. Citibank, for the benefit of its affiliates, engaged in self-dealing by charging undisclosed and/or unfavorable rates to ADR Holders in order to pocket the spread and reap profits at ADR Holders' expense.

78.     Based on the allegations herein, Citibank failed to act in good faith, consistent with its implied covenant of good faith and fair dealing.

79.     As a direct and proximate cause of Citibank's breach of its implied covenant of good faith and fair dealing, Plaintiffs and Class members have suffered injury and incurred damages, which they are entitled to recover from Citibank.

80.     Citibank continues to breach its implied covenant of good faith and fair dealing by deducting unreasonable FX conversion fees to siphon monies rightfully owed to ADR Holders, and Plaintiffs and Class members continue to suffer injury and incur damages.

## COUNT III
## CONVERSION

### (Against All Defendants)

81.     Plaintiffs restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

82.     Defendants wrongfully and intentionally caused and/or causes deductions to be taken from Plaintiffs' and Class members' ADR Cash Distributions.

83.     Pursuant to their rights under the Contract Documents, Plaintiffs and Class members hold possessory rights or interests, and are entitled to receive converted USD equivalents of the ADR Cash Distributions, less a reasonable fee.

84.     By charging ADR Holders unreasonable and grossly unfavorable FX rates, Defendants unlawfully retained a portion of the ADR Cash Distributions to which Plaintiffs and the Class hold possessory rights or interests.

85.     Defendants retained these funds unlawfully without the consent of Plaintiffs or Class members and deprived them of exercising control over the funds which belong to Plaintiffs and Class members.

86.     Defendants continue to unlawfully charge and retain unreasonable fees on the conversion of Cash Distributions for ADR Holders.

87.     Defendants intend to permanently deprive Plaintiffs and Class members of these funds, which are specific and readily identifiable pursuant to documents in the control of the Bank.

88.     As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiffs and Class members have suffered and suffer injury and damages and are entitled to recover from Defendants all damages, costs and amounts wrongfully converted.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests the following:

(a)     Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as Class representatives and Plaintiffs' counsel as counsel for the Class;

(b)     An Order enjoining Defendants from any further breach of the Contract Documents and/or their implied duties;

25

(c)     Compensatory, consequential, and general damages in an amount to be determined at trial;

(d)     Disgorgement and/or restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices, and the imposition of an equitable constructive trust over all such amounts for the benefit of the Class;

(e)     Punitive damages for each claim to the maximum extent available under the law due to the outrageous nature of Defendants' willful and wanton disregard for the rights of Plaintiffs and Class members;

(f)     Costs and disbursements of the action;

(g)     Pre- and post-judgment interest;

(h)     Reasonable attorneys' fees and costs; and

(i)     Such other and further relief as this Court may deem just and proper.

## VIII.   <u>JURY TRIAL DEMANDED</u>

A jury trial is hereby demanded.

Dated: June 2, 2015

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer
Sharan Nirmul
Jonathan Neumann
*(pro hac vice motion*
*to be filed)*
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056
Email: jmeltzer@ktmc.com
Email: snirmul@ktmc.com
Email: jneumann@ktmc.com

**EVERETT, WALES and COMSTOCK**
Amy C. Martin
Arkansas Bar No. 97075
1944 East Joyce Boulevard
P.O. Box 8370
Fayetteville, AR 72703
Tel: (479) 443-0292
Fax: (479) 443-0564
Email: amy@everettfirm.com

**MASON LAW FIRM, PLC**
G. Chadd Mason,
Arkansas Bar No. 93035
P.O. Box 1265
Fayetteville, AR 72702-1265
Tel:  (479) 442-6464
Email:  chadd@cabanafund.com

27